**BOWMAN AND BROOKE LLP**
Paul A. Alarcon (SBN: 275036)
    paul.alarcon@bowmanandbrooke.com
Samuel Q. Schleier (SBN: 312449)
    sam.schleier@bowmanandbrooke.com
Colton F. Parks (SBN: 322491)
    colton.parks@bowmanandbrooke.com
970 West 190th Street, Suite 700
Torrance, California 90502
Tel No.:    (310) 768-3068
Fax No.:    (310) 719-1019

Attorneys for Defendants
Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| JANE DOE LSA 340, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation; RASIER, LLC, a Delaware Limited Liability Company; RASIER-CA, LLC, a Delaware Limited Liability Company; and DOES 1 through 50 Inclusive<br><br>        Defendants. | Case No.: 3:23-cv-01165-AMO<br><br>**UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF JANE DOE LSA 340'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>**Hearing Information:**<br>Date:          November 2, 2023<br>Time:          2:00 p.m.<br>Courtroom:    10 (19th Floor)<br><br>Complaint Filed:    March 15, 2023<br>Trial Date:         None |

       Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") hereby respectfully submit the following Reply in support of their Motion to Dismiss Plaintiff Jane Doe LSA 340's ("Plaintiff") Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

/ / /

/ / /

/ / /

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED .......................................... 1

    A.    Uber Cannot be Vicariously Liable for the Alleged Assault ............................... 1

    B.    Plaintiff Has Not Properly Alleged Her Misrepresentation Claims .................................... 9

    C.    Plaintiff Admits that Her NIED Distress Claim is Duplicative ........................................ 10

    D.    Plaintiff Cannot State a Strict Product Liability Claim against Uber .............................. 10

    E.    Plaintiff's Request for Punitive Damages is without Factual Support ............................ 14

III.   CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Ahern v. Apple, Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................................ 10

*Alma W. v. Oakland Unified Sch. Dist.*,
    123 Cal. App. 3d 133 (1981) ..................................................................................... 7, 8

*Berger v. S. Pac. Co.*,
    144 Cal. App. 2d 1 (1956) ............................................................................................. 2

*Billetts v. Mentor Worldwide, LLC*,
    847 F. App'x 377 (9th Cir. 2021) ................................................................................ 14

*Brooks v. Eugene Burger Management Corp.*,
    215 Cal. App. 3d 1611 (Cal. App. 1989) .................................................................... 13

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) ................................................................................................. 5

*Cansino v. Bank of Am.*,
    224 Cal. App. 4th 1462 (2014) .................................................................................. 10

*Carr v. Wm. C. Crowell Co.*,
    28 Cal. 2d 652 (1946) .................................................................................................. 2

*Cervantes* v. *Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ................................................................................... 15

*College Hosp. v. Super. Ct.*,
    8 Cal. 4th 704 (1994) ................................................................................................. 14

*Daly v. Gen. Motors Corp.*,
    20 Cal. 3d 725 (1978) ................................................................................................ 13

*Dawes v. Super. Ct.*,
    111 Cal. App. 3d 82 (1980) ....................................................................................... 15

i

*Debbie Reynolds Prof. Rehearsal Studios v. Super. Ct.*,
    25 Cal. App. 4th 222 (1994) ................................................................................................ 6

*Doe 1 v. City of Murrieta*,
    102 Cal. App. 4th 899 (2002) ......................................................................................... 5, 7

*Doe v. Uber Techs., Inc.*,
    184 F. Supp. 3d 774 (N.D. Cal. 2016) ................................................................................ 8

*Doe v. Uber Techs., Inc.*,
    No. 19-CV-03310-JSC, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ......................... 8, 9

*Doe v. Uber Techs., Inc.*,
    No. 19-CV-03310-JSC, 2020 WL 2097599 (N.D. Cal. May 1, 2020) ............................ 7, 9

*Farmers Ins. Grp. v. Cnty. of Santa Clara*,
    11 Cal. 4th 992 (1995) ........................................................................................... 5, 6, 7, 8

*Fields v. Sanders*,
    29 Cal. 2d 834 (1947) ......................................................................................................... 2

*Ford Motor Co. v. Home Ins. Co.*,
    116 Cal. App. 3d 374 (1981) ............................................................................................ 15

*Garcia v. Sony Computer Ent. Am., LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) .............................................................................. 9

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) ............................................................................................ 10

*Germain v. J.C. Penney Co.*,
    No. CV 09–2847CAS(FMOX), 2009 WL 1971336 (C.D. Cal. July 6, 2009) ................... 9

*Gomez v. Super. Ct.*,
    35 Cal. 4th 1125 (2005) ...................................................................................................... 2

*Green v. ADT, LLC*,
    No. 16-CV-02227-LB, 2016 WL 3208483 (N.D. Cal. June 10, 2016) ............................ 11

*Hernandezcueva v. E.F. Brady Co.*,
    243 Cal. App. 4th 249 (2015) .......................................................................................... 11

ii

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C,
09–1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010).................................................... 9

*In re Actimmune Mktg. Litig.*,
No. C 08–02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ................................ 9

*In re iPhone 4S Consumer Litig.*,
No. C 12–1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) .................................... 9

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ............................................................................................................ 9

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
865 F. Supp. 2d 1002 (C.D. Cal. 2011) ................................................................................ 9

*Jackson v. Airbnb, Inc.*,
No. CV 22-3084 DSF (JCX), 2022 WL 16752071 (C.D. Cal. Nov. 4, 2022)................. 11

*Jane Doe No. 1 v. Uber Techs., Inc.*,
79 Cal. App. 5th 410 (2022) ................................................................................................ 11

*Jeffrey Scott E. v. Cent. Baptist Church*,
197 Cal. App. 3d 718 (1988) ................................................................................................ 6

*John R. v. Oakland Unified Sch. Dist.*,
48 Cal. 3d 438 (1989) ........................................................................................................ 6, 8

*John Y. v. Chaparral Treatment Ctr., Inc.*,
101 Cal. App. 4th 565 (2002) ................................................................................................ 7

*Johnson & Johnson Talcum Powder Cases*,
37 Cal. App. 5th 292 (2019) ................................................................................................ 14

*Kimberly M. v. Los Angeles Unified Sch. Dist.*,
215 Cal. App. 3d 545 (1989) ................................................................................................ 6

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012)............................................................................................................. 13

*Lackner v. North*,
135 Cal. App. 4th 1188 (2006) ............................................................................................ 15

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
   12 Cal. 4th 291 (1995) ........................................................................................... passim

*Lopez v. S. Cal. Rapid Transit Dist.*,
   40 Cal. 3d 780 (1985) .................................................................................................... 2, 3

*Lucas v. City of Visalia*,
   726 F. Supp. 2d 1149 (E.D. Cal. 2010) ........................................................................ 13

*M.P. v. City of Sacramento*,
   177 Cal. App. 4th 121 (2009) ......................................................................................... 6

*Marez v. Lyft, Inc.*,
   48 Cal. App. 5th 569 (2020) ........................................................................................ 3, 4

*Maria D. v. Westec Residential Sec., Inc.*,
   85 Cal. App. 4th 125 (2000) ........................................................................................ 5, 7

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................................................... 10

*Mary M. v. City of Los Angeles*,
   54 Cal. 3d 202 (1991) .................................................................................................... 5, 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ...................................................................................... 14

*Moreno v. Visser Ranch, Inc.*,
   30 Cal. App. 5th 568 (2018) ........................................................................................... 4

*Murphy v. E. R. Squibb & Sons, Inc.*,
   40 Cal. 3d 672 (1985) ..................................................................................................... 11

*O'Neil v. Crane Co.*,
   53 Cal. 4th 335 (2012) ................................................................................................... 13

*Ramirez v. Ghilotti Bros.*,
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) ..................................................................... 9, 14

*Rita M. v. Roman Catholic Archbishop*,
   187 Cal. App. 3d 1453 (1986) ......................................................................................... 6

iv

*Saller v. Crown Cork & Seal Co.*,
  187 Cal. App. 4th 1220 (2010) ........................................................................... 12

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) ............................................................... 10

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ................................................................................ 9

*Tabler v. Panera LLC*,
  No. 19-CV-01646-LHK, 2020 WL 3544988 (N.D. Cal. June 30, 2020) ............ 10

*Tomaselli v. Transamerica Ins. Co.*,
  25 Cal. App. 4th 1269 (1994) ............................................................................... 14

*Victoria v. Super. Ct.*,
  40 Cal. 3d 734 (1985) ............................................................................................ 3

*Weeks v. Baker & McKenzie*,
  63 Cal. App. 4th 1128 (1998) ............................................................................... 14

*White v. County of Orange*,
  166 Cal.App.3d 566 (1985) .................................................................................... 6

*White v. Soc. Sec. Admin.*,
  111 F. Supp. 3d 1041 (N.D. Cal. 2015) ............................................................... 10

*Winter v. G.P. Putnam's Sons*,
  938 F.2d 1033 (9th Cir. 1991) .............................................................................. 11

*Ziencik v. Snap, Inc.*,
  No. CV 21-7292-DMG (PDX), 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ..... 11

**Statutes**

Cal. Civ. Code § 2100 ................................................................................................ 2

Cal. Civ. Code § 3294 .............................................................................................. 14

**Other Authorities**

Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cybercrime*, 20 Berkeley
  Tech. L.J. 1553 (2005) ........................................................................................... 11

Patrick T. Miyaki, *Computer Software Defects: Should Computer Software Manufacturers Be Held Strictly Liable for Computer Software* Defects?, 8 Santa Clara Computer & High Tech. L.J. 121 (1992)...................................................................................................................................... 11

Table of Authorities                                    *Jane Doe LSA 340 v. Uber Technologies, Inc.*
                                                                    *3:23-cv-01165-AMO*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Uber's Motion to Dismiss should be granted and Plaintiff's vicarious liability claims (Counts 6-8), intentional and negligent misrepresentation claims (Counts 3 and 4), negligent infliction of emotional distress claims (Count 5), product liability claims (Counts 9 and 10), and request for punitive damages should be dismissed without leave to amend. Plaintiff cannot state a claim for relief under these theories of liability.

Plaintiff's Opposition misstates the law and, in many cases, even ignores Uber's arguments. *First*, Plaintiff attempts to save her vicarious liability claims by misstating controlling California law and advancing arguments that have been rejected by the California Supreme Court and appellate courts. Because the alleged assault that forms the basis of Plaintiff's Complaint was committed outside the scope of any alleged employment, there is no vicarious liability as a matter of law. *Second*, in addressing Uber's challenge to the misrepresentation claims, Plaintiff simply ignores that she must plead the claims with particularity under Rule 9(b). Her allegations do not meet this heightened standard. *Third*, Plaintiff concedes that a claim for negligent infliction of emotional distress is not a standalone claim under California law. *Fourth*, Plaintiff fails to allege a product liability claim because the Uber App is not a product, was not defective, and did not cause her injuries. *Fifth*, Plaintiff's request for punitive damages is without merit because her misrepresentation claim fails, and she also does not allege sufficient facts to establish her new "conscious disregard" theory. Accordingly, Uber's Motion to Dismiss should be granted.

## II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

### A.    Uber Cannot be Vicariously Liable for the Alleged Assault

In her Opposition, Plaintiff argues that Uber is vicariously liable for the alleged assault because it is a common carrier, the assault was within the scope of the alleged assailant's claimed employment, the assault was foreseeable, and public policy warrants holding Uber vicariously liable for the alleged assault. Plaintiff's arguments are contrary to decades of long-established California precedent. Indeed, in ruling on a complaint containing substantially the same allegations and claims in a coordinated proceeding involving hundreds of plaintiffs, the San Francisco County Superior Court recently held that, as a matter of law, Uber is not vicariously liable for sexual assaults committed by independent drivers using the Uber App. *In re Uber Rideshare Cases*, No. CJC-21-005188, Proc. No. 5188, at 4-12.

### 1.    California Does not Recognize Absolute or Strict Liability for Common Carriers

Plaintiff argues that the normal scope of employment requirement is irrelevant to her vicarious liability claims because she alleges that Uber is a common carrier. That argument erroneously conflates Plaintiff's direct negligence claim with the concept of vicarious liability. *See, e.g.*, Opp. at 10 (claiming that whether the alleged assailant was "within or without the scope of his employment is irrelevant" and then citing *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785 (1985), for the proposition that a public bus system may be liable for an assault of a passenger "under the heightened duty imposed on passenger carriers"). By arguing that Uber should be vicariously liable even if the assault was not within the scope of employment, Plaintiff is asking the Court to impose a form of strict liability that is not recognized under California law. Under Plaintiffs theory, common carriers are always liable for the intentional torts committed by employees, even when outside the scope of employment. This is contrary to California law.

Plaintiff relies exclusively on *Berger v. S. Pac. Co.*, 144 Cal. App. 2d 1 (1956). But *Berger* said nothing about vicarious liability, and neither the California Supreme Court nor any other appellate court has recognized *Berger* as creating a strict or automatic vicarious liability cause of action against common carriers irrespective of the scope of employment. In fact, the relevant statutory scheme and California precedent all make clear that Plaintiff's argument is incorrect: common carriers are not insurers against employee torts or crimes; rather, common carriers are subject to a heightened duty of care, the breach of which may be the basis of liability. *See, e.g.*, Cal. Civ. Code § 2100 (common carriers "must use the utmost care and diligence"); *Lopez*, 40 Cal. 3d at 785; *Gomez v. Super. Ct.*, 35 Cal. 4th 1125, 1130 (2005). Indeed, the phrases "vicarious liability" and "respondeat superior" (or any iterations thereof) are not used at all in the *Berger* opinion. Instead, *Berger* cites two cases in support of its holding, *Fields v. Sanders*, 29 Cal. 2d 834 (1947), and *Carr v. Wm. C. Crowell Co.*, 28 Cal. 2d 652 (1946), both of which found vicarious liability for torts arising out of the employee's "performance of his duties," *Fields*, 29 Cal. 2d at 840, and a "dispute arising out of the employment," *Carr*, 28 Cal. 2d at 654. *See Berger*, 144 Cal. App. 2d at 8. These same two cases were interpreted by the Supreme Court in *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291 (1995) as standing for the proposition that "an employer is vicariously liable for the torts of its employees committed *within* the scope of the employment." *Lisa M.*, 12 Cal. 4th at 296 (emphasis added).

A pair of back-to-back California Supreme Court cases decided three decades after *Berger* illustrate

that common carrier liability is a form of direct liability for a common carrier's breach of its duty of care; not a species of automatic vicarious liability. In *Victoria v. Super. Ct.*, 40 Cal. 3d 734 (1985), the Supreme Court cited *Berger* for the proposition that the "common law duty of an employer [is] to exercise due care in the employment and supervision of an employee who inflicted intentional harm." *Id.* at 745. The Court did not find that *Berger* created a common carrier exception from the principles of vicarious liability, or a novel claim for common carrier strict vicarious liability. The very next day, the California Supreme Court had another opportunity to make such a ruling in a case that involved a common carrier, but it did not. In *Lopez*, the Supreme Court reiterated that common carriers are not insurers of their passengers' safety, but rather are governed by "the degree of care and diligence . . . as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of the business of the carrier." 40 Cal. 3d at 785. The Court did not even mention *Berger*, or state that a common carrier could be liable for an employee's tortious conduct outside the scope of employment.

Plaintiff's argument that common carriers are absolutely liable for a tort committed by an employee outside the course of his employment is without support and contrary to well established California law on the matter—a fact that has been recently (and repeatedly) recognized by California courts as demonstrated by the various citations on page 7 of Uber's Motion to Dismiss. *See also In re Uber Rideshare Cases*, No. CJC-21-005188, Proc. No. 5188, at 10-12 ("*Berger* does not support Plaintiffs' contention that a common carrier may be held vicariously liable for intentional sexual torts of its employees or agents committed *outside* the scope of their employment, nor does it constitute 'binding precedent' on that subject.") (emphasis in original).

## 2.     The Alleged Assault was Outside the Scope of Any Alleged Employment

Plaintiff implicitly acknowledges that an employer cannot be held vicariously liable for torts committed by an employee unless the conduct falls within the scope of employment. *See Lisa M.*, 12 Cal. 4th at 296-97. But Plaintiff then misconstrues the concept of the "scope of employment" under California law claiming that the "treatment" of passengers is within the scope of employment such that any *mis*treatment is also within the scope of employment. This argument simply misstates California law.

Courts in California have articulated two tests regarding the scope of employment for purposes of vicarious liability. *Marez v. Lyft, Inc.*, 48 Cal. App. 5th 569, 577 (2020). Under the first test, an employer may

be "'liable if the activities that caused the employee to become an instrument of danger to others were undertaken with the employer's permission and were of some benefit to the employer, or in the absence of proof of benefit, the activities constituted a customary incident of employment.'" *Id.* (quoting *Moreno v. Visser Ranch, Inc.*, 30 Cal. App. 5th 568, 577 (2018)). Under the second test, "an employee's conduct is within the scope of his or her employment if (1) the act performed was either required or incident to his duties or (2) the employee's misconduct could be reasonably foreseen by the employer in any event." *Id.* (quoting *Visser Ranch*, 30 Cal. App. 5th at 577).

Plaintiff does not allege facts demonstrating that the alleged assault was within the course and scope of any alleged employment under either test. In fact, Plaintiff concedes that the alleged assault was not "undertaken with Uber's permission" and did not "benefit" Uber, *see* Opp. at 12 ("the fact that he was not authorized to assault her is immaterial"), and admits that the alleged assault was not required or incidental to the duties within the alleged employment, *see* Opp. at 11 ("stating that the assault was "a violation of [the assailant's duties]").

Rather than address this controlling California law, Plaintiff argues that because the alleged assault happened "en route" it was within the scope of the assailant's alleged employment. *See* Opp. at 11-13. This argument is a misstatement of the controlling authority, and would amount to a rule that an employer is vicariously liable for any tort by an employee that occurs while the employee is "on the clock." That is not the law. Plaintiff cites *Lisa M.* and argues that, whereas the alleged assault in that case occurred after the technician completed his examination, the alleged assault here occurred during the ride Plaintiff requested through the Uber App. This argument is without support in *Lisa M.* Contrary to Plaintiff's claims, that the assault occurred after the technician's initial examination was not dispositive and was not relied upon by the Supreme Court as being relevant to their decision that the technician's employer was not vicariously liable for the assault. Rather, *Lisa M.* built on decades of California precedent that clearly limit the scope of vicarious liability to cases in which the alleged tortious conduct was attributable to the alleged employee's employment. *Lisa M.*, 12 Cal. 4th at 305 ("an ultrasound technician's sexual assault on a patient is not a risk predictably created by or fairly attributed to the nature of the technician's employment."). Nothing in *Lisa M.* suggests that the Supreme Court would have reached a different result had the assault occurred during the initial examination. Indeed, California courts have repeatedly found sexual assaults by employees to be outside the

1   scope of employment—even if committed while the employee is carrying out his or her job duties. *See, e.g.*,

2   *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992 (1995) (deputy sheriff sexually harassed and

3   assaulted other deputies while on shift and working together with them); *Maria D. v. Westec Residential Sec.,*

4   *Inc.*, 85 Cal. App. 4th 125, 129 (2000) (plaintiff raped by on-duty security guard); *Doe 1 v. City of Murrieta*,

5   102 Cal. App. 4th 899 (2002) (on-duty officer sexually abused plaintiffs while on patrol), *disapproved of on*

6   *other grounds by Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021).

7           The same is true here. The alleged assault is not attributable to the assailant's alleged work because,

8   as Plaintiff alleges, the driver's duty was to pick up passengers at one location and drive them to another

9   location. Compl. ¶ 3; *see also In re Uber Rideshare Cases*, No. CJC-21-005188, Proc. No. 5188, at 9

10  ("Plaintiffs' allegations are insufficient to establish sexual assault is 'typical of or broadly incidental' to

11  ridesharing services."). If a hospital cannot be vicariously liable for a sexual assault carried out by an

12  employee who was permitted to perform physical examinations on vulnerable patients alone in a confined

13  space, then Uber certainly cannot be vicariously liable for a sexual assault carried out by an independent

14  driver whose "job" was providing rides to users of the Uber App. *See Lisa M.*, 12 Cal. 4th at 303 ("Although

15  the routine examination [the assailant] was authorized to conduct involved physical contact with [plaintiff],

16  [the] assault on plaintiff did not originate with, and was not a generally foreseeable consequence of, that

17  contact."); *see also id.* at 313 (Kennard, J., dissent.) (observing that "[t]o perform an ultrasound examination

18  on a pregnant woman, a technician rubs a gel on the woman's exposed lower abdomen" and describing this

19  as "intimate contact, inherent in the job").

20          **3.**      **Plaintiff Foreseeability Arguments Misstate California Law**

21          Plaintiff also cites to *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202 (1991), not only as purported

22  support for the groundless theory that employers are vicariously liable for any sexual assault carried out "on

23  the clock," but also for the strained argument that rideshare drivers wield authority similar in nature to the

24  police power exercised by law enforcement officers. Specifically, Plaintiff argues that sexual assaults by

25  independent drivers "are a well-known, foreseeable misuse of [the] driver's authority over their passengers"

26  and as a result, Uber should be held vicariously liable here. Opp. at 14.

27          This argument is meritless and Plaintiff's reliance on *Mary M.* is misplaced. The California Supreme

28  Court and appellate courts have repeatedly recognized that *Mary M.*'s holding is limited to sexual assaults by

5

on-duty police officers. *See Farmers*, 11 Cal. 4th at 1006 ("except where sexual misconduct by on-duty police officers against members of the public is involved (*e.g.*, *Mary M.*, *supra*, 54 Cal.3d 202; *White v. County of Orange* (1985) 166 Cal.App.3d 566 . . . ), the employer is not vicariously liable to the third party for such misconduct"); *Lisa M.*, 12 Cal. 4th at 304 (*Mary M.* expressly limited its holding to the "the unique authority vested in police officers"); *M.P. v. City of Sacramento*, 177 Cal. App. 4th 121, 124 (2009) ("we conclude the *Mary M.* holding that a public employer of a police officer may be vicariously liable for a sex crime committed by the officer against a person detained by the officer while on duty is, at best, limited to such acts by an on-duty police officer and does not extend to any other form of employment, including firefighting.").

These cases recognize that *Mary M.* was predicated on the unique authority vested in police officers. *See Mary M.*, 54 Cal. 3d at 218, n.11 ("We stress that our conclusion in this case flows from the unique authority vested in police officers."). Even Plaintiff recognizes this, but argues that the same rule should apply to independent drivers using the Uber App because they "have the power and opportunity to hold passengers captive." Opp. at 15. However, that the circumstances of the alleged employment "provided the opportunity for [the assailant] to meet plaintiff and to be alone with her in circumstances making the assault possible" does not render the alleged assault within the scope of employment. *Lisa M.*, 12 Cal. 4th at 299. It is the unique authority of a police officer (that is, the police power of the state itself) that underpins *Mary M. See Farmers*, 11 Cal. 4th at 1006 ("the mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable.").

For precisely this reason, courts have rejected attempts to hold employers vicariously liable in situations where the employees exercised far more "authority" or "power" than that of a driver transporting passengers from one location to another. *See, e.g.*, *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438 (1989) (school district not vicariously liable for teacher's sexual assault of a minor student); *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453 (1986) (church not vicariously liable for priest's sexual assault of parishioner); *Jeffrey Scott E. v. Cent. Baptist Church*, 197 Cal. App. 3d 718 (1988) (church not vicariously liable for Sunday school teacher's sexual assault of church member); *Kimberly M. v. Los Angeles Unified Sch. Dist.*, 215 Cal. App. 3d 545 (1989) (school district not vicariously liable for teacher's sexual assault of a minor student); *Debbie Reynolds Prof. Rehearsal Studios v. Super. Ct.*, 25 Cal. App. 4th 222 (1994) (dance studio not vicariously liable for dance instructor's sexual assault of minor student); *Farmers*, 11 Cal. 4th 992

1    (local government not vicariously liable for deputy sheriff's sexual misconduct toward subordinates); *Lisa*

2    *M.*, 12 Cal. 4th 291 (hospital not vicariously liable for ultrasound technician's sexual assault of patient)*;*

3    *Maria D.*, 85 Cal. App. 4th at 146 (security service not vicariously liable for security guard's sexual assault);

4    *Jane Doe 1*, 102 Cal. App. 4th at 905 (city not vicariously liable for officer's sexual abuse of minor in a

5    training program while driving alone with them in his car because the misconduct "did not arise out of the

6    exercise of [the officer's] job-created authority"); *John Y. v. Chaparral Treatment Ctr., Inc.*, 101 Cal. App.

7    4th 565, 576 (2002) (treatment center not vicariously liable for counselor's sexual assault of minor resident).

8        Plaintiff argues that Uber should be vicariously liable because it is easy for one with ill intentions to

9    gain access to the Ride platform and sexual assaults occurring on the platform is well known. The California

10   Supreme Court has already rejected this sort of foreseeability argument. Vicarious liability does ***not*** rest on

11   the frequency of prior alleged assaults. *Lisa M.*, 12 Cal. 4th at 302 ("[t]he [foreseeability] question is not one

12   of statistical frequency[.]"); *Farmers*, 11 Cal. 4th at 1009-10 (rejecting the statistics-based foreseeability

13   argument, stating that it "stretches the respondeat superior foreseeability concept beyond its logical limits"

14   and "ignores a basic tenet of respondeat superior law, i.e., that for the doctrine to apply, the tortious act must

15   arise out of the employment" and observing that were the Court to apply such an approach "applying the

16   same type of approach in other contexts, we would be forced to conclude, in direct conflict with *John R.* . . .

17   and numerous other California and out-of-state decisions, that sexual molestation by teachers and clergy is

18   an inherent risk of schools and religious institutions simply because of the frequency with which such

19   misconduct is claimed."); *see also Doe v. Uber Techs., Inc.*, No. 19-CV-03310-JSC, 2020 WL 2097599, at

20   *2 (N.D. Cal. May 1, 2020) ("The allegation that complaints of sexual assaults by Uber drivers have occurred

21   at high rates does not support a reasonable inference that any such assault arises out of the business.").

22       Rather, "'foreseeability' as a test for *respondeat superior* merely means that in the context of the

23   particular enterprise an employee's conduct is not so unusual or startling." *Farmers*, 11 Cal. 4th at 1004. This

24   form of foreseeability is concerned with the "relationship between the nature of the work involved and the

25   type of tort committed—that is, was the assailant's conduct part of his job or was it "unrelated to his [job]

26   duties"? *Lisa. M.*, 12 Cal. 4th at 303. Sexual misconduct is not foreseeable where it is "an independent, self-

27   serving pursuit wholly unrelated to his [job] duties," *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App.

28   3d 133, 141 (1981), and is not "engendered" by those duties. *Lisa M.*, 12 Cal. 4th at 298. As explained above,

7

the alleged assault here is unrelated to and not engendered by the assailant's alleged work because, as Plaintiff alleges, his duty was to pick up passengers at one location and drive them to another location. Nothing about sexual assault is "typical or broadly incidental" to the provision of rideshare services as such.

### 4.   Plaintiff's Public Policy Arguments are without Merit

Finally, Plaintiff argues that "sound policy militates in favor of vicarious liability for assaults by Uber's drivers against its passengers." Opp. at 16. However, California courts have already concluded that the relevant public policy considerations do not warrant the imposition of vicarious liability for sexual misconduct, except in the unique circumstances of on-duty policy officers. *See Lisa M.*, 12 Cal. 4th at 305 (concluding the relevant public policies do not alter the conclusion that sexual misconduct is outside the scope of employment). Plaintiff's arguments that vicarious liability for such assaults should be imposed more broadly in other employment contexts to force employers to internalize the costs of injuries resulting from such assaults and to ensure plaintiffs have a remedy in the form of deep corporate pockets have been considered and soundly rejected. *See, e.g.*, *Farmers*, 11 Cal. 4th at 1016-17 (finding policy factor of giving assurance of compensation to a victim neutral in light of ability of plaintiffs to bring direct liability claims and finding policy factor of ensuring victim's losses are borne by those who benefit from the enterprise that gave rise to the injury factored against imposing vicarious liability were sexual assault is simply too attenuated from the assailant's job duties); *John R.*, 48 Cal. 3d at 451 (all three factors weighed against imposing vicarious liability on school district for sexual assault of minor student by teacher); *Alma W.*, 123 Cal. App. 3d at 143-44 ("The 'spread the risk' concept underlying the doctrine of respondeat superior does not mean that attribution of liability to an employer is merely a legal artifice invoked to reach a deep pocket or that it is based on an elaborate theory of optimal resource allocation."). There is no reason to treat Uber differently from these other types of employers; or to treat the rideshare industry differently than other industries.

Plaintiff's reliance on *Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016), for this point is unavailing. As explained by Judge Corley in a subsequent decision from this district, the *Doe* decision cannot "be squared with *Lisa M.* and the test it applies to sexual assault by employees on third parties." *Doe v. Uber Techs., Inc.*, No. 19-CV-03310-JSC, 2019 WL 6251189, at *5 (N.D. Cal. Nov. 22, 2019). Applying *Lisa M.*, Judge Corley concluded that Uber could not be vicariously liable because the complaint did "not plausibly allege that the sexual assault arose from the assailant's job to drive Plaintiff to her chosen

destination," and the assault was not foreseeable because it was "the independent product of the assailant's aberrant decision to engage in conduct unrelated to his duties." *Doe*, 2019 WL 6251189, at *4-5. Plaintiff's allegations here are no different. As a matter of law, Uber is not vicariously liable for the alleged assault, and Plaintiff fails to state a claim for relief pursuant to vicarious liability. *See also Doe*, 2020 WL 2097599, at *1-2 (granting Uber's motion to dismiss false imprisonment, assault, and battery claims, following *Lisa M.*).

### B.   Plaintiff Has Not Properly Alleged Her Misrepresentation Claims

In opposing Uber's Motion to Dismiss her misrepresentation claims, Plaintiff offers only two arguments: first, she contends that reliance may be "presumed" because the alleged misrepresentations were made in advertisements; and second, she contends that some of the alleged misrepresentation are not puffery. These arguments are without merit, and Plaintiff concedes Uber's other legal challenges to these claims.[1] *See Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1210-11 n.7 (N.D. Cal. 2013) (argument is conceded where plaintiff fails to address it in opposition) (collecting cases).

Plaintiff cites *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), for the proposition that she is not required to identify specific advertisements or her reliance on those advertisements. *See* Opp. at 19. Plaintiff's argument is incorrect. "Although *Tobacco II* purportedly alters the pleading standard to show standing [for a fraud claim arising under California's Unfair Competition Law], in federal court, it does not excuse a plaintiff prosecuting claims which 'sound in fraud' from their obligation to satisfy Rule 9(b)." *Garcia v. Sony Computer Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012); *see also In re iPhone 4S Consumer Litig.*, No. C 12–1127 CW, 2013 WL 3829653, at *12 (N.D. Cal. July 23, 2013); *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09–1597 CW, 2010 WL 3448531, at *8 (N.D. Cal. Sept. 1, 2010); *In re Actimmune Mktg. Litig.*, No. C 08–02376 MHP, 2009 WL 3740648, at *8-10 (N.D. Cal. Nov. 6, 2009); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1048 (C.D. Cal. 2011); *Germain v. J.C. Penney Co.*, No. CV 09–2847CAS(FMOX), 2009 WL 1971336, at *4 (C.D. Cal. July 6, 2009);

---

[1] Plaintiff does not, for example, respond to the argument that her intentional and negligent misrepresentation claims are both subject to Rule 9(b), which requires fraud to be plead with fraud must be plead with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Similarly, Plaintiff does not respond to the arguments that her Complaint fails to adequately allege falsity with specificity beyond asserting that Uber's representations must be false because she was assaulted. But nowhere in her Complaint does Plaintiff identify a representation by Uber guaranteeing that the Rides platform would be entirely immune from societal issues such as criminal conduct. And the allegations that an assault occurred (even if true) in no way demonstrates that the other representations referenced in the Complaint were false.

1   *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1219-20 (C.D. Cal. 2012). And even if *Tobacco II* altered

2   federal pleading requirements, Plaintiff's allegations do not even meet the standard articulated in that

3   decision. For example, Plaintiff does not allege that any misrepresentations were made as part of an

4   advertising campaign and she "does not identify upon which advertisements [she] relied." *Tabler v. Panera*

5   *LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *9 (N.D. Cal. June 30, 2020). Plaintiff's generic

6   assertions of justifiable reliance, stating that "[i]n getting into the Uber," she reasonably relied on Uber's

7   representations is insufficient.

8           As to her second argument, Plaintiff claims that certain statements by Uber are testable assertions

9   whose falsity may be proven. But the representations Plaintiff references are not falsifiable and therefore

10  cannot form the basis of a fraud claim. *Ahern v. Apple, Inc.*, 411 F. Supp. 3d 541, 557 (N.D. Cal. 2019);

11  *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816,

12  835 (2002). Regardless, for these identified representations, Plaintiff has pleaded no specific facts establishing

13  that they are actually false. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009) ("The

14  falsity of the representation must also be alleged with particularity."). For example, Plaintiff argues that the

15  "driver 'screening check' promised is subject to factual verification," but she does not point to a single

16  allegation in her Complaint where she pleads that Uber's representations about driver screening checks were

17  false (or specifically how it was false). *Ahern*, 411 F. Supp. 3d at 559.

18          **C.      Plaintiff Admits that Her NIED Distress Claim is Duplicative**

19          Plaintiff essentially concedes that her negligent infliction of emotional distress claim is duplicative of

20  her general negligence claim, but states that she "should be allowed to raise emotional distress as a harm

21  resulting from her various claims for negligence and intentional torts." Opp. at 20. Uber's Motion is not

22  challenging Plaintiff's claim for such damages as part of her general negligence cause of action. But Plaintiff

23  may not assert duplicative causes of action based on a theory that is merely a form of damages and not a

24  separate tort. *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015) (dismissing NIED

25  claim "as duplicative of Plaintiffs' negligence claim").

26          **D.      Plaintiff Cannot State a Strict Product Liability Claim against Uber**

27                  **1.      The Uber App is Not a Product**

28          Plaintiff principally argues that Uber should be subject to strict product liability because Uber does

not offer a service because "services entail <u>human</u> labor."[2] Opp. at 21-22 (emphasis in original). This argument is based on a flawed premise—Uber employs numerous persons who enable Uber to carry out its business of providing digital multisided marketplace platforms to facilitate connections. Regardless, Plaintiff's argument that automation of some aspects of the services Uber provides means that Uber is not providing services makes no sense. Just because telephone companies moved from switchboards with human operators to switchboards run by computers does not mean that such companies stopped providing services. Nothing about the fact that a human is not directly involved in each and every connection made between users of Uber's platforms means that Uber is not providing a service. Courts applying California law have already held that companies providing platforms for the connection of users "is more akin to a service than to a product." *Jackson v. Airbnb, Inc.*, No. CV 22-3084 DSF (JCX), 2022 WL 16752071, at *9 (C.D. Cal. Nov. 4, 2022) (citing *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 419 (2022)); *see also Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDX), 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (holding that the Snapchat app is not a product as "Snapchat is more like a service than a product, and services are not subject to the laws of strict products liability.").[3]

Regardless, even assuming the Uber App is a product (it is not), where a transaction involves both a service and a product, strict product liability will apply **only** "if the purchase of a product is the 'primary objective' or 'essence' of the transaction." *Murphy v. E. R. Squibb & Sons, Inc.*, 40 Cal. 3d 672, 695 (1985); *see also Hernandezcueva v. E.F. Brady Co.*, 243 Cal. App. 4th 249, 258 (2015). Given that the Uber App is provided for free, a rider's transaction with Uber obviously is not for the purpose of purchasing the App. Uber does not make money by "selling" its App; Uber's profits come from providing the platforms on which users

---

[2] In response to the extensive commentary and analysis from the Restatement discussed in Uber's Motion to Dismiss, Plaintiff cites to a law review article by a law student that ultimately concludes "this author believes that the courts have been justified and correct in not applying strict products liability to computer software manufacturers." Patrick T. Miyaki, *Computer Software Defects: Should Computer Software Manufacturers Be Held Strictly Liable for Computer Software Defects?*, 8 Santa Clara Computer & High Tech. L.J. 121, 144 (1992). Plaintiff also cites another law review article that advocates for the creation of a new tort—negligent enablement—for software publishers whose software that allows cybercriminals to exploit vulnerabilities. Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cybercrime*, 20 Berkeley Tech. L.J. 1553 (2005). The article does not advocate for imposing strict liability on software publishers; rather the tort "negligent enablement" would have elements of duty, breach, causation, and damages as with other negligence theories.

[3] Plaintiff's reliance on *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035-36 (9th Cir. 1991), is unavailing. There, the court remarked in *dicta* that computer software might be treated as a product in certain circumstances merely to emphasize that, even if that were the case, the plaintiff's attempt to invoke strict product liability with respect to a printed book was without merit. So too with Plaintiff's reliance on *Green v. ADT, LLC*, No. 16-CV-02227-LB, 2016 WL 3208483, at *3 (N.D. Cal. June 10, 2016). That case indisputably involved a product—namely, the physical alarm system. *Id.*

are able to connect. *See In re Uber Rideshare Cases*, No. CJC-21-005188, Proc. No. 5188, at 18 ("[A] customer's primary objective when downloading and using the Uber App is to request a ride in a car and get paired with a driver who is dispatched to pick up and drive the customer to their destination in exchange for a fee. . . . Customers do not purchase the App. . . .").

And the precedent cited above forecloses Plaintiff's argument that "public policy" favors treating the Uber App as a product for the purposes of ensuring victims have access to deep corporate pockets and that Uber should have to internalize the costs of doing business. Opp. at 23-24. These same "policy" considerations would apply equally to any other corporate defendants providing services, yet the Courts have consistently rejected attempts to subject service providers to strict product liability. In any event, Plaintiff is pursuing negligence causes of action against Uber. Her suggestion that she will be foreclosed from seeking relief without a strict product liability claim is simply not true.

### 2.    Plaintiff was Not Injured by a "Defect" in the Uber App

Even if the Uber App were a product—indeed, especially if it were a product—it still would not be subject to strict product liability without a defect in the design, manufacturing, or function of the "product." But Plaintiff's Opposition makes it clear that her central accusation is that Uber purportedly failed to implement better or additional safety measures or procedures that are unrelated to the underlying design of the App. Opp. at 24-25. Those same allegations are the basis of Plaintiff's negligence claims, as they relate to the conduct and policies of the company, not the design or performance of the Uber App software.

Plaintiff does not argue that the Uber App failed to function as intended by the design of its software code—that is, for riders to connect with drivers. Neither the Complaint nor the Opposition alleges, for instance, the App had a glitch or bug that impaired its functionality, or that the App froze or crashed due to some flaw in the design of the software. There is, in short, no allegation that the App itself did not function as expected or had an inherent and dangerous design flaw. *See Saller v. Crown Cork & Seal Co.*, 187 Cal. App. 4th 1220, 1231-32 (2010) (a design defect may be established under two theories: "(1) the consumer expectations test, which asks whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of danger inherent in the design.").

Likewise, the Complaint does not allege that the design of the App itself, such as its coding sequences,

1  is dangerous when used and therefore requires warnings. *See Kurns v. R.R. Friction Prods. Corp.*, 565 U.S.

2  625, 635 (2012) (a failure-to-warn claim must "allege[] that the product itself is unlawfully dangerous unless

3  accompanied by sufficient warnings or instructions."). Again, Plaintiff's contention is that Uber's allegedly

4  inadequate safety measures resulted in the sexual misconduct of independent drivers and, consequently,

5  establish Uber's purportedly negligent behavior. Opp. at 24-25.

6      Further, the remedial conduct Plaintiff seeks has nothing to do with the design of the App itself: She

7  asserts that Uber should take steps "to adequately screen drivers before including them in the driver network"

8  and to require "live or recorded monitoring" while trips are proceeding. *Id.* at p. 24. Accusing Uber of

9  negligence for not providing warnings to the public and not requiring cameras in cars does not identify a

10  design defect in the Uber App and its software.

11      In *Brooks v. Eugene Burger Management Corp.*, 215 Cal. App. 3d 1611 (Cal. App. 1989), the

12  appellate court rejected a theory of product liability akin to Plaintiff's theory here. There, the plaintiff tried to

13  convert a negligence theory into one for strict product liability even though there was no allegation of a defect

14  in a product. The court declined to recognize the product liability claim, in part, because the plaintiff "merely

15  designate[d] his fourth cause of action 'Products Liability' but found his argument in support thereof upon

16  the theory of 'Premises Liability,'" which the plaintiff separately alleged, just as Plaintiff here separately

17  alleges negligence. *Id.* at 1627. In *Brooks*, the failure of the defendant to install fencing around a "complex

18  of apartment dwellings, playground equipment and grounds" was not a cognizable product liability claim. *Id.*

19      In sum, relabeling a negligence claim as product liability claim does not suffice to state such a claim.

20  Likewise, making the "bare allegation" that the Uber App "suffered from a 'design defect'" is no more than

21  "an insufficient legal conclusion." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010). And

22  product liability cannot be used as a catch-all law to "impose absolute liability" on Uber, *O'Neil v. Crane*

23  *Co.*, 53 Cal. 4th 335, 363 (2012) (citation omitted), or make Uber "the insurer of [] safety," *Daly v. Gen.*

24  *Motors Corp.*, 20 Cal. 3d 725, 733 (1978), absent an allegation that the App itself is defective.

25         **3.**    **Plaintiff Concedes that She Cannot Establish Causation**

26      Finally, Plaintiff's Opposition does not respond to Uber's arguments that the Complaint fails to plead

27  causation as to the strict product liability causes of action. *See* Motion to Dismiss at 22-24. Her failure to do

28  so operates as an implicit concession that Uber's challenge to her allegations in this respect is meritorious.

1   *See Ramirez*, 941 F. Supp. 2d at 1210-11 n.7.

2       **E.**    **Plaintiff's Request for Punitive Damages is without Factual Support**

3       In support of her request for punitive damages, Plaintiff relies upon her inadequately pleaded

4   misrepresentation claim. Opp. at 25. But because Plaintiff's misrepresentation claims must be dismissed, they

5   cannot support a claim for punitive damages. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104

6   (9th Cir. 2008) (dismissal can be warranted based on either a lack of a cognizable legal theory or the absence

7   of factual support for a cognizable legal theory).

8       Plaintiff also contends that Uber acted with conscious disregard of the risk of injuries to others because

9   it "knew that flooding the streets with barely screened drivers and no oversight would result in its passengers

10  being raped and sexually assaulted, yet forged ahead so it could capture market share and depress driver

11  bargaining power" and that someone officer, director, or managing agent probably knew of these risks and

12  willfully failed to avoid them. Opp. at 25. As an initial matter, such "conclusory and speculative allegations

13  are insufficient to state a parallel failure to warn claim." *Billetts v. Mentor Worldwide, LLC*, 847 F. App'x

14  377, 379-80 (9th Cir. 2021).

15      Regardless, "conscious disregard of the rights or safety of others" is only one of the elements of malice

16  under California law. *See* Cal. Civ. Code § 3294(c)(1) (defining "malice" as "**despicable conduct** which is

17  carried on by the defendant with a **willful** and **conscious disregard** of the rights or safety of others.")

18  (emphasis added); *College Hosp. v. Super. Ct.*, 8 Cal. 4th 704, 725 (1994) (holding that each of the three

19  statutory elements imposes a separate requirement to find malice—no term is "surplusage."). Here, Plaintiff

20  does not argue that she has alleged facts sufficient to establish the other elements of malice. For example, she

21  has not alleged any despicable conduct by an Uber officer, director, or agent that caused her injury. Despicable

22  conduct has "the character of outrage frequently associated with crime," but the Complaint does not even

23  allege that Uber failed to comply with any regulations governing safety. *Tomaselli v. Transamerica Ins. Co.*,

24  25 Cal. App. 4th 1269, 1287 (1994). Plaintiff's allegations that Uber officers, directors, "and/or" managing

25  agents negligently set certain policies cannot meet that exacting standard. *See Johnson & Johnson Talcum*

26  *Powder Cases*, 37 Cal. App. 5th 292, 332-35 (2019) (evidence of "unreasonable and negligent" corporate

27  policies focused on avoiding liability is insufficient to support punitive damages); *Weeks v. Baker &*

28  *McKenzie*, 63 Cal. App. 4th 1128, 1150 (1998) (punitive damages unavailable where the corporation was

1   negligent or reckless, even if the underlying wrongful conduct by employee was malicious).

2         Finally, Plaintiff does not even adequately allege the "conscious disregard" element. Rhetorical and

3   conclusory assertions are not enough. Plaintiff must plead facts that would establish, if true, that a particular

4   Uber officer, director, or managing agent intentionally performed an act from which he or she knew, or should

5   have known, it was highly probable that harm would result, and then deliberately failed to avoid that harm.

6   *Ford Motor Co. v. Home Ins. Co.*, 116 Cal. App. 3d 374, 381 (1981). Mere, "proof of negligence, even gross

7   negligence, or recklessness is insufficient to warrant an award of punitive damages." *Dawes v. Super. Ct.*,

8   111 Cal. App. 3d 82, 87 (1980); *see also Lackner v. North*, 135 Cal. App. 4th 1188, 1211 (2006)

9   (recklessness insufficient for punitive damages). Here, Plaintiff pleads no facts identifying any Uber

10  officer, director, or agent who intentionally performed an act that he or she knew would highly likely result

11  in riders being assaulted and then deliberately failed to avoid that harm.

12  **III.**   **CONCLUSION**

13        Plaintiff cannot cure the deficiencies in her allegations as to the causes of action challenged by way

14  of Uber's Motion to Dismiss because, for the most part, those causes of action fail as a matter of law.

15  Accordingly, for the reasons discussed above and more fully explained in its moving papers, Uber's Motion

16  should be granted without leave to amend. *See Cervantes* v. *Countrywide Home Loans, Inc.*, 656 F.3d 1034,

17  1043 (9th Cir. 2011) (dismissal without leave to amend proper where leave to amend would be futile).

18

19  Dated: August 14, 2023                                     **BOWMAN AND BROOKE LLP**

20

21

22                By: */s/  Paul A. Alarcon*

23                Paul Alarcon (SBN: 275036)
                  Samuel Q. Schleier (SBN: 312449)

24                Colton F. Parks (SBN: 322491)
                  970 West 190th Street, Suite 700

25                Torrance, California 90502
                  Tel: (310) 380-6595

26                Attorneys for Uber Technologies, Inc.,

27                Rasier, LLC, and Rasier- CA, LLC

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 14, 2023, I electronically transmitted the foregoing **UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF JANE DOE LSA 340'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of *Electronic* Filing to all CM/ECF registrants such as the following:

William A. Levin, Esq.
Laurel L. Simes, Esq
LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
wlevin@levinsimes.com
llsimes@levinsimes.com


        */s/ Louisa Beck*